CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 13 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRENDA D. YOUNGER, )
   Plaintiff, )
) Civil Action No. 7:06cv00694
v. )
)
MICHAEL J. ASTRUE, ) By: Hon. Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY ) United States Magistrate Judge
   Defendant. )

## MEMORANDUM OPINION

Plaintiff Brenda D. Younger ("Younger") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's ("Commissioner") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").

The parties have consented to the court's jurisdiction and the case is before the court on cross motions for summary judgment. Following the filing of the administrative record and briefing, oral argument was held on October 23, 2007. As such, the case is now ripe for decision. Having reviewed the record, and after briefing and oral argument, the decision of the Administrative Law Judge ("ALJ") must be affirmed.

### I.

The court may neither undertake a <u>de novo</u> review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when,

considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

The Commissioner employs a five-step process to evaluate disability claims. 20 C.F.R. § 404.1520; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in sufficient numbers in national economy. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Younger was born on January 6, 1948, is a high school graduate, and completed two years of college. (Administrative Record [hereinafter "R."] 139, 146) Younger previously worked as a quality assurance inspector with Hanover Direct from 1999 until 2004. (R. 143)

Prior to that, Younger worked as a tumbler inspector from 1993 to 1998. (R. 143) Younger protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 29, 2004. (R. 88-92) Younger's application alleges disability onset date of August 13, 2004 due to depression and fibromyalgia.[1] (R. 142-43) Younger's claim was initially denied on February 21, 2005, (R. 62), and upon reconsideration on May 27, 2005. (R. 72) An ALJ held an administrative hearing in this matter on May 16, 2006, (R. 24-59), and issued a decision on September 21, 2006 finding Younger not disabled. (R. 12-18) The Appeals Council denied Younger's request for review on November 6, 2006 rendering the decision final. (R. 5-7)

At the administrative hearing, Younger testified that Dr. William C. Ward was her treating physician and that Dr. Ward had treated her for over twenty-five years. (R. 31) While Dr. Ward has treated Younger over many years, he noted fibromyalgia as a new problem for younger for the first time on October 9, 2003. (R. 270) During subsequent visits Younger complained both of tenderness and fatigue. (R. 263) On January 12, 2004 Dr. Ward added a new problem of back pain. (R. 260) On June 8, 2004, Dr. Ward reported that Younger experienced "a lot of difficulty with her job because of very severe fibromyalgia." (R. 246) On August 27, 2004, Dr. Ward assessed Younger's fibromyalgia as deteriorated and noted that "in to discuss disability. She's disabled because of fibromyalgia." (R. 245) On that visit, Dr. Ward noted on physical exam that she "appears to be in moderate pain with no apparent distress."(R. 244) On January 14, 2005, Dr. Ward re-evaluated Younger's fibromyalgia and confirmed his previous diagnosis. (R. 243) Dr. Ward also completed a disability form for Younger on January 14, 2005 in which he opined that Younger had been unable to work since August 16, 2004 based on his

---

[1]Fibromyalgia is pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. Dorland's Illustrated Medical Dictionary 697 (30th Ed. 2003).

diagnoses of fibromyalgia, back pain, and headaches. (R. 204) According to Dr. Ward, Younger would not be able to remain seated for longer than fifteen minutes, could sit for less than one hour in an eight-hour workday, could walk or stand less than fifteen minutes continuously, could walk for less than one hour in an eight-hour workday, and would need to rest for four hours out of an eight-hour workday. (R. 201)

Dr. William Humphries, a state medical consultant, examined Younger a month later on February 3, 2005. (R. 205-209) Dr. Humphries' report details the progressive worsening of Younger's pain symptoms beginning in 2002 and notes that Younger has suffered from depression since early childhood. (R. 205) Dr. Humphries examined Younger and found her to be "in no distress who answers questions appropriately, relates well to the examiner and is cooperative with the examiner." (R. 206) Dr. Humphries found slightly reduced range of motion in Younger's neck because of "pain in the base of the cervical spine and near the trapezius muscles bilaterally to palpation." (R. 206) Dr. Humphries also noted that Younger's "range of motion of her back was in normal limit with mild dorsal kyphosis.[2]" (R. 206) Dr. Humphries noted "moderate tenderness to palpation of the lumbar paraspinal musculature and the superior buttocks bilaterally," (R. 206), and negative straight leg raising. Dr. Humphries found Younger's "[j]oint range of motion at the upper extremities is full without tenderness, heat swelling or deformity." (R. 206) He further noted adequate coordination, gait and no motor or sensory loss in the extremities. (R. 206-07) Dr. Humphries diagnosed fibromyalgia and chronic fatigue by history and referenced "multiple myalgias on this exam."[3] (R. 207) Dr. Humphries

---

[2] Kyphosis is "abnormally increased convexity in the curvature of the thoracic as viewed from the side" it is commonly referred to as hunchback. Dorland's Illustrated Medical Dictionary 986 (30th Ed. 2003).

[3] A myalgia is pain in a muscle or muscles. Dorland's Illustrated Medical Dictionary 1205 (30th Ed. 2003).

also noted lumbar strain and possible degenerative joint disease. As to RFC, Dr. Humphries opined that based on:

> objective findings in this evaluation, she was found to be limited to sitting, standing, walking six hours in an eight-hour workday. Lifting 50 pounds occasionally and 25 pounds frequently. There should be no restrictions on climbing, stooping, kneeling, crouching, or crawling. No restrictions at all.

(R. 207-208)

Subsequent to this visit, Dr. Ward saw Younger on May 12, 2005. (R. 241-42) Dr. Ward's notes from this visit reveal that Younger's fibromyalgia again deteriorated. Dr. Ward's treatment plan indicated that Younger is "very significantly impaired with her fibromyalgia and fatigue." (R. 241) Dr. Ward suggested that Younger see Kim Watts for physical therapy in order to alleviate her pain. (R. 241) Dr. Ward saw Younger again on June 16, 2005 and again diagnosed fibromyalgia with multiple trigger points. (R. 234) The last visit by Younger to Dr. Ward that is part of the administrative record occurred on December 7, 2005 in which Dr. Ward noted that her fibromyalgia had again deteriorated. (R. 321)

Following Dr. Ward's referral, Younger began physical therapy with Kim Watts on May 31, 2005. (R. 318-19) In Watts' initial evaluation she noted that Younger is unable to work due to her pain, is unable to do housework, and is only able to do minimal cooking and driving. Furthermore, Watts' notes reveal that Younger "desires a normal life [without] restrictions or pain, fatigue." (R. 318) Younger's second visit to Watts, June 10, 2005, showed promise as Younger's pain symptoms improved from the exercises. (R.312-13) Younger continued to visit Watts on a nearly weekly basis from June 10, 2005 through August 5, 2005. (R. 289-313) In the period from June 10 through August 2, Watts' notes indicate that Younger's pain symptoms steadily improved. (R. 297-313) During this time period Younger was able to engage in more

5

activity around her house, was less fatigued, and was even able to go for walks. (R. 297) In fact, on August 5, 2005, Younger indicated that she was ready to discontinue physical therapy as she felt "65% improvement in her overall . . . pain and mobility." (R. 290)

On April 11, 2006, Dr. Catherine Daniel, a rheumatologist, evaluated Younger. (R. 324-34) Dr. Daniel's assessment indicated that Younger suffered from "diffuse pain most likely consistent with fibromyalgia," and that fibromyalgia "is the most likely explanation for her fatigue, arthralgia and pain." (R. 324) During this visit, Dr. Daniel discussed fibromyalgia with Younger as well as various treatment options and medications. Dr. Daniel's physical examination of Younger revealed tender points throughout her body. (R. 327)

### III.

The court finds that the decision of the Commissioner must be affirmed. The ALJ's decision is supported by substantial evidence from the record as presented. The ALJ properly explained why he declined to follow the opinion of Younger's treating physician, Dr. Ward, that she was disabled. In this regard, it is significant that Dr. Ward's opinion that Younger is completely disabled was given before Younger started physical therapy which appear from the progress notes to have substantially improved her condition.

Younger argues that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Ward. An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is

entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In this matter, the ALJ does not give significant weight to the opinion of Dr. Ward in crafting Younger's RFC. (R. 16) The ALJ reasons that Dr. Ward's "findings are not consistent with his treatment notes, which are notable for an absence of objective findings of disease or dysfunction." (R. 16) The ALJ also finds it "somewhat significant that the claimant's private disability insurer denied her claim for long term disability payments." (R. 16) The ALJ minimizes the opinion of Dr. Ward by noting that:

> The claimant's treating physicians offer little in the way of
> objective findings to show severe dysfunction as a result of

7

Case 7:06-cv-00694-mfu   Document 21   Filed 12/13/07   Page 7 of 10   Pageid#: 64

> fibromyalgia or any other impairment. Treatment has been given based on subjective complaints offered by the claimant. Rarely does the reporting physician note objective findings to serve as a basis for findings of dysfunction.

(R. 16)

In analyzing the factors set forth in 20 C.F.R. § 404.1527, there exists persuasive evidence in the record to contradict Dr. Ward's opinion. <u>Mastro</u>, 270 F.3d at 178. It is true that the treating relationship between Younger and Dr. Ward can be described as nothing but a substantial ongoing relationship, as Dr. Ward treated Younger for over 20 years. Additionally, Dr. Ward, from October 9, 2003 through December 7, 2005, clearly diagnoses Younger with fibromyalgia. This assessment was confirmed with testing for tenderness in various trigger points. Dr. Daniel, the rheumatologist, also confirmed the diagnosis of fibromyalgia and noted "tender points throughout" Younger's body. Dr. Ward's analysis, diagnosis, and observation of tender points coupled with Dr. Daniel's confirmation is sufficient to establish that Younger is suffering from fibromyalgia. Even Dr. Humphries, the examining state agency doctor, confirms the diagnosis of fibromyalgia and chronic fatigue. (R. 207)

A diagnosis alone, however, is not sufficient to render Younger disabled under the Act. For Younger's claim to succeed she must prove that her fibromyalgia creates functional limitations which render her incapable of performing substantial gainful activity. <u>Heckler v. Campbell</u>, 460 U.S. 458, 460 (1983). The ALJ does not dispute Dr. Ward's diagnosis of fibromyalgia and explicitly says in his opinion that "the medical evidence establishes that [Younger] has fibromyalgia and obesity, which constitute severe impairments." (R. 17) This alone, however, does not render Younger disabled, and the ALJ went on to determine Younger's residual functional capacity. The ALJ did not completely disregard Dr. Ward's opinion, in fact the ALJ agreed with Dr. Ward's diagnosis of fibromyalgia.

The only aspect of Dr. Ward's opinion that the ALJ did not follow is Dr. Ward's assessment of Younger's functional capacity as a result of fibromyalgia. (R. 16) Dr. Ward opined that Younger would not be able to remain seated for longer than fifteen minutes, could sit for less than one hour in an eight-hour workday, could walk or stand less than fifteen minutes continuously, could walk for less than one hour in an eight-hour workday, and would need to rest for four hours out of an eight-hour workday. (R. 201).

This opinion, however, is contradicted by persuasive evidence and the ALJ's decision to disregard this portion of Dr. Ward's opinion is supported by substantial evidence. The record establishes that Dr. Humphries' examination of Younger revealed little to no physical difficulty during the examination. Furthermore, the notes from Younger's physical therapy and the mutual decision to discontinue physical therapy because of its success in combating Younger's pain and fatigue undercut Dr. Ward's earlier opinion as to total disability. The fact that Dr. Ward completed the disability form on January 14, 2005, months before Younger's successful physical therapy, seriously negates the value of such an opinion. The physical therapy notes are telling. Watts writes that Younger "reports that she feels 65% improvement in her overall . . . pain and mobility." (R. 290) Additionally, Younger was "doing more around her house, staying up more" and experiencing "less fatigue." (R. 290) This report was signed not only by Watts, but also by Dr. Ward. (R. 290) Under the substantial evidence standard, significant improvement in Younger's condition reflected in the physical therapy notes constitutes a sufficient basis to question the functional assessment done by Dr. Ward prior to Younger's physical therapy.

Because of the absence of objective clinical findings in Dr. Ward's notes and the improvement in Younger's condition noted in the physical therapy notes, there is substantial

9

evidence to support the ALJ's conclusion that Younger did not meet her burden of establishing that she is disabled from all work.

### IV.

For the foregoing reasons, the court concludes that given the standard required for review of the Commissioner's administrative decision, this case must be affirmed. The ALJ did not ignore the opinion of Younger's treating physician, Dr. Ward, and chose not to give it controlling weight consistent with the regulations because it was not supported by objective clinical findings and importantly, does not reflect the substantial improvement in her condition as a result of her course of physical therapy. Accordingly, the Younger's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 13th day of December, 2007.

Michael F. Urbanski
United States Magistrate Judge